CHAMPLIN
*v.*
CHAMPLIN.

JOHN DEPEYSTER CHAMPLIN *v.* ELIZABETH S. CHAMP-
LIN, *et. al.*

(*Original Bill.*)

ELIZABETH S. CHAMPLIN *et. al. v.* JOHN DEPEYSTER
CHAMPLIN.

(*Cross Bill.*)

Although the court may not choose to stay executors and trustees from mak-
ing sales of real estate authorized in words by a will on a bill filed by a
remainder-man entitled to an unascertained share, yet it can secure the
purchase-money during a life estate on the principle of *quia timet.* But to
do so, all parties in remainder must be before the court, unless the bill be
filed by one on behalf of all having similar rights. As must a trustee
who has not accounted; as well as a person having a lien upon the com-
plainant's share.

*April* 18,
1843.

*Pleading.
Quia ti-
met.
Parties.
Remain-
der man.
Trustee.*

THE contents of the bill in this case appear sufficiently
in the report on the motion made for an injunction : See
vol. 3, p. 571.

A cross bill was afterwards filed, which will be found re-
ferred to in the opinion of the court. The decision will be
understood without further reference to the particulars of
the case.

Mr. *H. S. Mackay* and Mr. *W. Sandford,* for John De-
peyster Champlin.

Mr. *Warner,* for Elizabeth S. Champlin and others.

*June* 11,
1844.

THE VICE-CHANCELLOR :—The object of the original bill
is three fold : 1. To restrain the sale of the remaining se-
venteen lots of land belonging to the estate. 2. To call the
defendants to an account for the proceeds of previous sales
and other dispositions of the capital of the estate ; and, 3.
To have any losses of the capital made good and the whole
or, at least, that part of it which will belong to the com-

plainant on the death of his mother deposited in court or safely invested or secured.

In respect to the first: It is sufficient to say that, upon the order to show cause in the first instance, the injunction was refused; and upon a bill for a specific performance against one of the purchasers at the sale then made, the court for the trial of impeachment and correction of errors have decided (contrary to the chancellor's views) that the sale was a valid one and the purchaser bound to take the title and complete his purchase. It may be a very different question, however, as regards the purchase money, i. e. whether this court is not bound, on the doctrine of *quia timet*, to interpose and see to the security of the fund during the continuance of the life estate: Jeremy's Eq. Jur. 350; 2 Story's Eq. 130.

But, there are objections to such an interference upon the face of the present bill. All the necessary parties are not before the court; nor is the bill framed so as to allow parties to come in under a decree for an account. The other children entitled to interests in remainder are not made defendants; and the bill does not purport to be filed by the complainant for himself and on behalf of those having similar rights and interests. Besides, Mr. Herring, although discharged from the trust, yet, as a late acting trustee, is a necessary party to the taking of an account which would seem to be prerequisite to the securing of any fund in or by the aid of this court. Hamblin would appear, likewise, to be a necessary party as holding the title to or having a lien upon the complainants' share of the estate. And even if the taking an account be not essential to a decree for securing the fund admitted to be now on hand, there is still wanting, as parties to be bound by such decree, the complainants' co-tenants in remainder. They have an equal interest with him; and their right to the fund is combined with his claim. There has been no ascertainment of the fund in point of amount—no appropriation or setting apart of a specific amount to be divided into aliquot parts as belonging to certain known owners, so as to give the owner of any one part or share the right to file a bill for his own as a distinct and separate fund, without making the other owners parties. This was held to be admissible in *Smith* v. *Snow*, 3 Mad.

C. R. 10, and also in *Hutchinson* v. *Townsend*, 2 Keen's R. 676. But the facts of the present case do not warrant such a departure from the rule which requires that all persons having an interest, although remote, in the same subject matter, must be made parties to the suit or the bill must be so framed as to give them an opportunity to come in and be made parties.

As the present bill is defective in the particulars to which I have alluded, no decree can be made upon it, however proper it may be for the court to interfere *quia timet.* It must be dismissed, with costs; but without prejudice to the complainants' filing a new bill, if he shall be so advised, to have an account of the capital of the estate and security for its forthcoming on the death of the mother.

Next, as to the cross-bill. The testimony fails to prove that any real damage was sustained in the sale of the seventeen lots of land by the steps taken on the part of the defendant to this cross-bill. The use he made of the order of this court on that occasion was rather an abuse of such order, but it does not appear to have been attended with any very injurious consequences. Mr. Selden's prompt and judicious explanation appears to have counteracted the design, so that the sale proceeded and the lots brought fair prices. No witness has positively stated that the lots would have sold for a dollar more if the defendant had not interfered. There is no ground, therefore, to charge the defendant with actually depreciating the price of the lots or causing them to be sold for less than they would otherwise have brought. If, by his subsequent conduct, the purchasers have been deterred from a completion of their contracts, so that a loss in that way has been or shall be produced, I will not say that a responsibility does not rest upon him to make good such loss to the estate. But, it does not yet appear that a loss of that sort has been sustained. *Non constat* but the purchasers have been or may be compelled specifically to perform. A decision to that effect in one case has been shown to me. It will be time enough to consider, when the estate comes to be divided among the children or grand children of the tenant for life, whether the present defendant shall make good prices at which the lots were struck off to bidders at the sale

in question, provided it shall appear that his interference has prevented such sales from being carried into effect and the property shall not afterwards bring as much money. I cannot undertake to anticipate what may be the result; and it must remain until the facts are made known. If all the sales should be consummated or the remaining lots should sell for as much hereafter, there will be no loss to charge upon the defendant, however improper his conduct, if improper it should be deemed.

Another claim is made by the cross-bill: that the defendant is largely indebted to the estate for monies advanced by the executors or some of them and which ought to be set off and charged against his interest in the estate. The testimony of Mr. Herring proves an advance, by the executors, of one thousand dollars to set him up in business when he was only nineteen years of age. This cannot now be decreed as a debt against him. He has a right to take advantage of his infancy and of the statute of limitations as a bar to the claim as a legal demand. If it can be regarded in the light of an advancement out of or on account of his distributive share of the estate, it will be in season to attend to it when the estate comes to be divided and the accounts settled and adjusted preparatory to the division among the remaindermen.

There is nothing else in this bill to be considered; and it must be dismissed, with costs; but without prejudice to any claim which may be made upon John Depeyster Champlin or his share of the estate for advancement or anything in that light; and also without prejudice to any claim upon him to make good the prices at which lots were struck off to purchasers if it shall be made to appear that his interference prevented the fulfilment of the contracts of sale or of any of them.